**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
*Southern Division*

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | * | |
| v. | * | **CRIMINAL CASE NO. PWG-13-243** |
| **SHAUN ORLANDO GRIER,** | * | **(Civil Case No.: PWG-17-2900)**[1] |
| Defendant. | * | |
| | * | |

* * * * * * * * * * * * * *

**MEMORANDUM OPINION AND ORDER**

Shaun Orland Grier was charged in a five-count indictment[2] with two counts of possession with intent to distribute a controlled substance, in violation of 21 U.S.C. § 841 (Counts 1 and 2); one count of possession of a firearm having been previously convicted of a crime punishable by a term exceeding one year, in violation of 18 U.S.C. § 922(g) (Count 3); one count of possession of body armor having been previously convicted of a felony considered to be a crime of violence, in violation of 18 U.S.C. § 931(a)(2) (Count 4); and one count of possession of a firearm in furtherance of a drug trafficking offense, in violation of 18 U.S.C. § 924(c) (Count 5). Second Superseding Indictment, ECF No. 33. A six-day jury trial began on November 5, 2013, which resulted in Grier's conviction on Counts 1, 2, 3, and 5, and an acquittal on Count 4. Jury Verdict, ECF No. 66. On January 2, 2014, the Court sentenced Grier to a term of 290 months as to Counts 1, 2, and 3 (to be served concurrently) and a term of 60 months as to Count 5 (to run consecutively)

---

[1] The ECF Numbers cited herein refer to the documents filed in Defendant's criminal case.

[2] The Government tried Grier on charges pursuant to the September 23, 2013 second superseding indictment after a grand jury originally indicted him on May 13, 2013 and issued a superseding indictment on July 1, 2013.

for a total sentence of 350 months imprisonment. Jmt., ECF No. 79. The Court also imposed supervised release terms of three years as to Count 1, eight years as to Count 2, and five years as to Counts 3 and 5, to be served concurrently. *Id.* Grier appealed, ECF No. 81, and the Fourth Circuit affirmed his conviction. *See United States v. Grier*, 619 F. App'x 227 (4th Cir. 2015).

Now pending is Grier's Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence, ECF No. 106, and extensive Memorandum in Support, ECF No. 106-2, which he filed without the assistance of counsel. The Government filed a comprehensive opposition, ECF No. 110; and Grier filed a Reply, ECF No. 112, and a supplemental exhibit, ECF No. 115.[3] Grier advances numerous arguments that his attorney provided ineffective counsel during his trial. He argues that his counsel failed (1) to make several arguments based on what he believed to be illegal search and seizure in violation of the Fourth Amendment and *Miranda* violations, (2) to introduce a relevant expert witness, (3) to argue for a *Franks* hearing, or (4) to argue competently for the exclusion of highly prejudicial evidence with no probative value. Yet, Grier has not shown that his attorney's performance was constitutionally deficient or demonstrated "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *See Strickland v. Washington*, 466 U.S. 668, 694 (1984). Moreover, many of these issues were, in fact, argued at trial and raised on Grier's direct appeal. Accordingly, I will deny his § 2255 Motion.

---

[3] Grier also filed a request for extension of time to file his reply, ECF No. 111, which is granted, and his Reply is accepted as filed. Additionally, through counsel, Grier filed a Supplemental Motion, ECF No. 107. As the Government notes, "counsel merely lists numerous generic claims without any application of the law to the facts of this case." Gov't Opp'n 1 n.1. This does not comply with Rule 2 of the Rules Governing Section 2255 Proceedings for the United States District Courts, which requires that a motion "state the facts supporting each ground." Rule 2. Consequently, I will not consider the unsubstantiated claims in the Supplemental Motion. *See id.*

## Standard of Review

28 U.S.C. § 2255(a) permits a prisoner to file a motion to vacate, set aside, or correct a sentence on the ground that it "was in violation of the Constitution or laws of the United States . . . or that the sentence was in excess of the maximum authorized by law . . . ." The prisoner must prove his case by a preponderance of the evidence. *Brown v. United States*, Civil No. DKC-10-2569 & Crim. No. DKC-08-529, 2013 WL 4562276, at *5 (D. Md. Aug. 27, 2013). If the court finds for the prisoner, "the court shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate." 28 U.S.C. § 2255(b). Although "a *pro se* movant is entitled to have his arguments reviewed with appropriate deference," the Court may summarily deny the motion without a hearing "if the § 2255 motion, along with the files and records of the case, conclusively shows that [the prisoner] is not entitled to relief." *Brown*, 2013 WL 4563376, at *5 (citing *Gordon v. Leeke*, 574 F.2d 1147, 1151-53 (4th Cir. 1978); 28 U.S.C. § 2255(b). A petitioner may not "recast, under the guise of collateral attack" issues considered on direct appeal. *Boeckenhaupt v. United States*, 537 F.2d 1182, 1183 (4th Cir. 1976); *see also Anderson v. United States*, 468 F. Supp. 2d 780, 785 (D. Md. 2007) ("It is well-established law that an issue that has been determined on direct appeal may not be relitigated in a § 2255 motion.").

Grier's claims are all based on ineffective assistance of trial counsel as the alleged constitutional violation. To prevail on these claims, Grier

> must show that counsel's performance was constitutionally deficient to the extent that it fell below an objective standard of reasonableness, and that he was prejudiced thereby. *Strickland v. Washington*, 466 U.S. 668, 687–91 (1984). In making this determination, there is a strong presumption that counsel's conduct was within the wide range of reasonable professional assistance. *Id.* at 689; *see also Fields v. Att'y Gen. of Md.*, 956 F.2d 1290, 1297–99 (4th Cir. 1992). Furthermore, the petitioner "bears the burden of proving *Strickland* prejudice." *Fields*, 956 F.2d at 1297. "If the petitioner fails to meet this burden, a reviewing court need not

consider the performance prong." *Fields*, 956 F.2d at 1297 (citing *Strickland*, 466 U.S. at 697).

*United States v. Lomax*, Civil No. WMN-13-2375 & Crim. No. WMN-10-145, 2014 WL 1340065, at *2 (D. Md. Apr. 2, 2014).

To show prejudice, the defendant must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. A probability is reasonable if it is "sufficient to undermine confidence in the outcome." *Id.* Additionally, the defendant must show that "the 'result was fundamentally unfair or unreliable.'" *Lomax*, 2014 WL 1340065, at *2 (quoting *Sexton v. French*, 163 F.3d 874, 882 (4th Cir. 1998) (quoting *Lockhard v. Fretwell*, 506 U.S. 364, 369 (1993))); *see also Lockhard*, 506 U.S. at 369 ("[A]n analysis focusing solely on mere outcome determination, without attention to whether the result of the proceeding was fundamentally unfair or unreliable, is defective.").

## Discussion

*Failure to Raise Fourth Amendment Arguments Competently Regarding Seizure and Detention of Package*

On February 27, 2013, Postal Inspectors in Linthicum, Maryland stopped a package based on several suspicious characteristics, and a K-9 police dog trained to detect various narcotics positively responded to the package. Warrant Aff. (mail), ECF No. 106-9. This Court issued a search warrant for the package, and on March 5, 2013, law enforcement officers searched the package and discovered $30,000 in U.S. currency. *Id*. These events led the Government to seek a search warrant for Grier's residence, which was listed as the return address on the package in question; the subsequent search of Grier's residence led to the bulk of the evidence introduced by the Government at trial. Returned Search Warrant (residence), ECF No. 106-7.

4

Grier argues that his trial counsel "was incompetent in her litigation of Petitioner's Fourth Amendment issue for suppression" by failing to subject the Government's case to "adversarial testing" during the suppression hearing relating to the seizure and subsequent search of the package allegedly mailed by Grier to California. Pet. Mem. 1. Grier first contends that his counsel was "unfamiliar with the law" and failed to conduct a "proper investigation" into the sequence of events concerning the Post Office's stopping of a suspicious package and the Drug Enforcement Agency's subsequent seizure of the package that contained incriminating evidence. *Id.* at 4. He also asserts that she failed to argue that the Post Office acted as an agent of the Government with relation to his claim that the Post Office lacked probable cause to search the package and that the Post Office seized the package for an unreasonable amount of time without probable cause before obtaining a search warrant. *Id.* at 5, 38.

The assistance of Grier's counsel was not objectively unreasonable in handling these Fourth Amendment issues. Far from "guessing" or making a "completely uninformed decision" concerning the probable cause to stop and eventually seize the incriminating package, she challenged the Government's (both the Post Office and DEA) actions in seizing and then continuing to detain the package at length by written motion, and at the pretrial motions hearing she argued:

> Given that there was not reasonable, articulable suspicion of crime being afoot, this package should never have been detained. The package never should have been taken out of the flow of the mail services. It should not have been placed into another room. So at that point, given that there was no basis for the stop, the initial detention, I argue that everything that happened thereafter with this package would have been the fruit of the poisonous tree.

Oct. 10, 2013 Pretrial Mot. Hr'g 15:5-13, ECF No. 89; *see also* Mot. to Suppress, ECF No. 41. As noted, the presumption is that counsel's performance fell "within the range of reasonable professional assistance," *Strickland*, 466 U.S. at 689, and these efforts further support the

5

Government's argument that Grier received effective assistance on these Fourth Amendment issues; Grier does not provide any evidence to the contrary. Additionally, the constitutional merit of the Court's decision to deny Grier's Motion to Suppress was raised on direct appeal and rejected by the Fourth Circuit. *See Grier*, 619 F. App'x at 227. Grier cannot "recast, under the guise of collateral attack" issues raised on direct appeal. *Boeckenhaupt*, 537 F.2d at 1183.

As for Grier's assertion that counsel failed to argue that the package was seized for an unreasonable length of time without probable cause, Pet. Mem. 38, Grier's counsel specifically raised this issue at trial as well, arguing:

> [A]fter the detention itself, when the package was placed there, there is no indication in the affidavit of how long it took before the dog came. It says it was that day. It said that it was sometime on the 27th. It doesn't say one hour, two hours, three hours, or otherwise, and, obviously, the burden is on the government to prove that it was a reasonable period of time. In some cases, they say 20 minutes is enough. In some cases, they say an hour and a half is enough. In this particular case, we are working with a whole 24 hours. All we know is that at some point in time this package was detained on the 27th, and at some point in time on the 27th, the package was, in fact, sniffed by a dog. But what's odd even further after that, which is why I bring up the issue in *United States vs. Sharpe*, 470 U.S. 675, is that after the detention of the packaging and after the sniff by the dog, several days elapsed before a search warrant was even attempted to be obtained. This happened on a Wednesday, the 27th. Thursday, Friday, and then the following Monday was the first time the warrant, itself, was sought. In *Sharpe*, the Court talked -- this was a – the Court talked about, in assessing whether this detention is too long a duration to be justified, it determined whether or not the officers diligently pursued a means of investigation that were likely to dispel their suspicions, i.e., getting the warrant. In this particular case, no one even attempted to acquire the warrant until the following Monday. There is no reason why the warrant could not have been requested on Thursday, on Friday. Those were all business days. But in this particular case, I do not believe the brevity was met. This package was left somewhere unknown to anyone at this point, because there is no evidence of where it was, what its conditions were, who had control of it, or otherwise.

Oct. 10, 2013 Pretrial Mot. Hr'g 15–17. Again, in light of the vigorous argument of this issue by Grier's counsel both in a written brief and at the Pretrial Motions Hearing, Grier has not overcome

the presumption that his counsel's performance was reasonable. *See Strickland*, 466 U.S. at 689.

As for Grier's argument about the "agency relationship," I agree with the Government that it is irrelevant because there was "never a question as to whether the search of the mail package was subject to the requirements of the Fourth Amendment," and I incorporate by reference the Government's response. *See* Gov't Opp'n 7. Accordingly, all three of Grier's claims of ineffective assistance of counsel due to failure to argue Fourth Amendment claims relating to the search and seizure of mail fall short of the *Strickland* standard.

*Failure to Introduce a DNA Expert*

Grier's argument regarding his attorney's failure to introduce a DNA expert is not a model of clarity. He argues that the assistance his trial counsel provided was ineffective because she failed to provide timely notification of her intent to present an expert witness to "rebut the Government's D.N.A. [sic] expert's report and findings." Pet. Mem. 9. Yet, the evidence he believes his attorney should have had admitted through his expert was not a rebuttal of the report but rather the evidence *in* the Government's expert's report, which he insists "contained exculpatory evidence." *Id.* at 10. Further, although the Government retained the expert who provided the report, it was defense counsel who sought to introduce the Government's expert's testimony based on the report. Grier also contends that his attorney provided "false testimony . . . when questioned by the Court about [the] untimeliness" of her notification. *Id.* at 13.

The Government's DNA forensic analyst, Jessica Charak, only was able to develop a DNA profile from one of the three guns found in Grier's residence and vehicle. Nov. 7, 2013 Trial Tr. 182:18 – 183:2, ECF No. 93. The DNA found on the gun was "not enough information to exclude [the Defendant] nor . . . include him because it[] [was] not enough information in general." *Id.* at

7

215:20–25. She did testify however, outside the presence of the jury, that there was an allele on the gun that was not Grier's, while also noting that the presence of that allele did not mean that Grier's DNA was not also on the gun. *Id.* at 222–23. She also testified that "the [DNA] profile, itself, was not suitable for comparison." *Id.* at 224. The Government filed a motion *in limine* to exclude her testimony insofar as Grier sought to introduce it as evidence that DNA other than his was on the gun, and it renewed the motion at trial. *Id.* at 150; *see also* Gov't Mot., ECF No. 53. Grier's attorney argued for its admission. Nov. 7, 2013 Trial Tr. 228.

After extensive oral arguments from Grier's counsel, the Court excluded Ms. Charak's proffered testimony because it featured "too many assumptions . . . and too many hypotheticals." *Id.* at 228. Because it did not exclude or include any person from touching the gun, it would not be helpful to a jury in making relevant findings of fact. *See id.*

After the Court excluded the Government's expert witness's testimony that defense counsel sought to introduce, defense counsel attempted to introduce her own DNA forensics analyst, whose testimony to establish that someone else touched the gun would rely on the same report. *Id.* at 228:22 – 229:3. The Court denied this request not only for its untimely introduction, but also because it found that any additional presentation of the same DNA report by a different expert would be equally unhelpful to a jury, given that Ms. Charak testified there was "insufficient evidence and information to make any conclusions or comparisons." *Id.* at 231:12–17.

Grier's assertion that his counsel was ineffective for failing to provide adequate notice to introduce a new DNA expert does not satisfy the prejudice prong of *Strickland* because there is not a reasonable probability that the proceedings would have turned out differently if his attorney had not made the purported unprofessional errors. *See Strickland*, 466 U.S. at 694. First, Grier cannot show that the Court would have allowed his DNA expert to testify if his attorney had moved

earlier to introduce the expert, because the Court found the DNA report on which Grier's expert planned to rely—the report authored by the Government's expert—itself insufficient. Grier's expert had no additional data or report of her own and only sought to testify based on the report that the Court already had ruled could not form the basis for Charak's testimony. Nov. 7, 2013 Trial Tr. 228–31. Second, even if either expert's testimony that someone else touched the gun in question was admitted, it would not overcome the totality of evidence against the defendant presented at trial relating to Count 3 (violation of § 922(g)). *See Strickland*, 466 U.S. at 695 (finding that when considering the prejudice prong, a court "must consider the totality of the evidence before the judge or jury."). If Grier had been allowed to introduce evidence that someone else's DNA may have been on the gun, it would not have successfully rebutted evidence of joint possession.

> The jury determined that you were responsible for the packages of money that were sent to California for the PCP and you were involved in drugs. And they determined that while others may have been in the same bedroom with you, you spent time in there and that was yours. *And whether it's sole or joint, the law makes no distinction between joint and individual*.

Sentencing Tr. 36:14–20, ECF No. 99 (emphasis added). Therefore, had Grier's counsel been successful in presenting testimony to a jury that someone else may have touched the gun, it still would not "raise a reasonable probability that undermines our confidence in the jury verdict." *Huffington v. Nuth*, 140 F.3d 572, 582 (4th Cir. 1998). Because Grier fails to show any prejudice on the part of his counsel's failure to timely introduce a DNA expert, there is no need to consider her performance. *See Fields*, 956 F.2d at 1297.

As for Grier's argument that his counsel provided false testimony during oral arguments on this issue, I incorporate by reference the Government's well-reasoned analysis. Gov Opp'n 9. Simply put, Grier's counsel had no knowledge that Ms. Charak's testimony would be excluded

prior to the hearing and therefore did not make a false statement when she stated that she did not know that she would be unable to rely on Ms. Charak's testimony. Nov. 7, 2013 Trial Tr. 228:22 – 229:8. Accordingly, both of Grier's claims of ineffective assistance of counsel relating to the exclusion of his DNA expert fall short of the *Strickland* standard.

*Failure to Argue Admissibility of Pre-Arrest Statements*

Grier also argues that his counsel was deficient for failing to argue that any statements he made prior to being advised of his *Miranda* rights should have been suppressed. Pet. Mem. 20. Additionally, he argues that the same statements should be suppressed because law enforcement officers did not have probable cause to stop his vehicle. *Id.* at 23.

According to Officer Jernigan, Grier was riding in a vehicle that the officers stopped because the driver was speeding, and the driver then consented to the vehicle's search, which justified a prolonged stop. Nov. 7, 2013 Trial Tr. 136:6–12; *see United States v. Branch*, 537 F.3d 328, 336 (4th Cir. 2008) ("[A] prolonged automobile stop requires either the driver's consent or a 'reasonable suspicion' that illegal activity is afoot."). Grier insists that the stop was pretextual. Pet. Mem. 23.

According to Officer Jernigan, after law enforcement agents stopped the vehicle, an officer informed Grier that a search warrant was about to be executed on Grier's residence, asked him if anyone else was in the house, and asked whether Grier would be willing to accompany him to the house "to handle the situation." Nov. 7, 2013 Trial Tr. 126–27. Grier insists that the occupants of the vehicle had been removed from the vehicle; the vehicle's keys and registration and the occupants' phones were taken so that they were not free to leave; and he was told that the others would be released if he agreed to accompany the officer to his residence. Pet. Mem. 21–22. The parties agree that Grier then entered the officer's unmarked duty vehicle and proceeded to his

residence, where the search warrant was being executed. *Id.* Shortly after entering the vehicle, Grier made the allegedly voluntary statements "I just want to die," and "No, no, I don't want to die. I can't do that to my mother. I'll just go to jail, then I'll die." *Id.* at 127.

Although both the Government and Grier argue the merits of whether Grier made the contested statements freely and voluntarily, I find it unnecessary to resolve the debate. Counsel's failure to argue for excluding the statements does not demonstrate a "reasonable probability that . . . the "result of the proceedings would have been different." *Strickland*, 466 U.S. at 694. Preventing the jury from hearing Grier's reaction to the search on his residence would not have overcome the overwhelming physical evidence against Grier stemming from the search of his residence. *See* Returned Search Warrant, ECF No. 106-7. Because Grier fails to show any prejudice to his verdict for his counsel's failure exclude his pre-arrest statements, there is no need to consider her performance under *Strickland*. *See Fields*, 956 F.2d at 1297.

*Failure to Challenge Probable Cause to Obtain Search Warrant for Residence*

Grier argues that his attorney provided ineffective assistance because she did not argue that the affidavit supporting the search warrant to search his residence "did not establish a connection between petitioner and the residence to be searched, nor a link between the residence and any criminal activity." Pet. Mem. 29. However, Grier's counsel actually argued this issue at length at the Pretrial Motions Hearing on October 10, 2013.

> I will argue that there were four factors specifically presented to the magistrate judge which allowed the magistrate to determine whether or not a warrant should issue. I argue that those four factors in themselves was not a substantial basis by which a judge should have granted a search warrant of the 9007 Simpson Lane property. The one factor obviously was the package, the package that they seized that we just discussed. Okay. So there was a package that was sent from one place to another with $30,000 in it. That's factor number one. The second factor, they indicated, "they" being the "affiant," indicated that they observed Mr. Grier driving a vehicle, and someone got into Mr. Grier's vehicle and got out of the vehicle. That's it. According to the officer, in his experience, when people get in and out of

> a vehicle in the Clinton area, that is associated with drugs. The third factor was they observed Mr. Grier again driving the vehicle. Mr. Grier went to PetSmart. Mr. Grier came out of PetSmart. With Mr. Grier was an individual that helped him carry a bag. They put the bag of dog food, as the affiant indicated, in the trunk. The individual sat in the car again for a couple of moments and then got out of the car. According to the affiant, that is an indicia of drug activity. That person then left, and that person was stopped in their car. There were no drugs found on that person; however, there were -- there was indicia of drugs, according to the affiant. There was a scale, there was, if I recall, there were some baggies, but -- and some residue that was not identified as being drug residue. Again, that's what was found in that person -- on that person's car. Also, there was a car that was registered to Mr. Grier, yet driven by someone else, and according to the officers, was parked in front of a known drug dealer's home. That's what they say, with no other corroboration. That's it. Again, not parked in front of Simpson Lane, not driven by Mr. Grier, but just on its own parked in front of some house. No connection to that person and a drug dealer, no connection to whether that person actually went into the home of a drug dealer, just that that person -- that the car, itself, was parked in front of that home. Not saying whether or not that home was close to other homes, whether it was parked in front of multiple homes, or whether it was in a driveway of a particular home. Just that that car was parked somewhere on the street in front of a home of a known drug dealer. And finally, which I guess would make five as opposed to four, the affiant indicates that there was a detention or a discussion with a confidential source in Arkansas, and according to that confidential source, that confidential source was involved in drug activities with someone in California, and that person in California would ask -- advise the confidential source to send him money, and then he would send drugs to D.C. and Ohio, not to Maryland. But they don't talk about the reliability of that source. Oftentimes, in these affidavits, you hear that this is a reliable source that's provided us information, reliable information on multiple occasions. Nothing. Just a source that we are not going to give up, a confidential source tells us that he was in jail with someone, and according to that someone, they were involved in drug activities. Based on those five factors, the magistrate judge then decided to grant a search warrant of Simpson Lane. Again, there is not enough of a substantial basis by which there should have been a warrant granted for Simpson Lane. There is no connection to any illegal activity at Simpson Lane.

Oct. 10, 2013 Pretrial Mot. Hr'g 31–34; *see also* Mot. to Suppress. Not only is there the "presumption that counsel's conduct falls within the wide range of reasonable professional assistance," *Strickland*, 466 U.S. at 689, but it also is evident that Grier's counsel zealously litigated this issue. Thus, Grier's claim that his counsel rendered ineffective assistance by failing

to challenge whether there was probable cause to search the residence does not meet the *Strickland* standard.

Additionally, the constitutional merit of the Court's decision to deny Grier's Motion to Suppress based upon the sufficiency of the probable cause of the search warrant was raised on direct appeal and rejected by the Fourth Circuit. *See Grier*, 619 F. App'x at 227. Grier cannot "recast, under the guise of collateral attack" issues he raised on direct appeal. *Boeckenhaupt*, 537 F.2d at 1183.

### *Failure to Request a* Franks *Hearing*

Petitioner also argues that his counsel provided ineffective assistance when she did not request a *Franks* hearing concerning alleged false statement made on the affidavit for the warrant to search the package. If a defendant makes a "substantial preliminary showing" that the affiant knowingly and intentionally (or with reckless disregard for the truth) made a false statement that was necessary to the finding of probable cause, the defendant is entitled to a *Franks* hearing to determine whether the affidavit would have reasonably provided satisfactory probable cause for a magistrate judge to issue the warrant without the false statement or omission. *United States v. White*, 850 F.3d 667, 673 (4th Cir. 2017) (quoting *Franks v. Delaware*, 438 U.S. 154, 155–56 (1978)).

Grier insists that the affiant, Inspector Jones, falsified the affidavit by stating that "[t]he databases reviewed did not reflect an individual by the name of 'Maria Fuentes' residing at 85 Bruce Ave., San Francisco, CA 94112, the address of the SUBJECT PARCEL." *See* Warrant Aff. (mail). Grier's argument is based upon the testimony of another postal employee, Inspector Rigakos, who confirmed that, prior to the events of February 2013, "someone by the name of Maria Fuentes was receiving mail at 85 Bruce Ave." Nov. 5, 2013 Trial Tr. 106:10–14, ECF No. 91.

The Government counters that Grier has not made a "substantial preliminary showing" that Inspector Jones made a false statement on his affidavit, and I incorporate its well-reasoned analysis by reference. *See* Gov't Opp'n 18–19. First, the *Franks* test focuses on the affiant's knowledge (or lack thereof) at the time the search warrant affidavit was executed; Inspector Jones was the affiant, not Inspector Rigakos, and therefore Inspector Rigakos's testimony eight months later is irrelevant. Second, Inspector Rigakos's statement that someone was *receiving mail* addressed to Maria Fuentes at that address does not contradict the statement that the database used by Inspector Jones indicated that no one named Maria Fuentes actually *resided* at that address. *See id.* at 19. Therefore, Grier's counsel's failure to requesting a *Franks* hearing was reasonable, and Grier has not met the *Strickland* standard. *See Strickland*, 466 U.S. at 689.

*Failure to Argue for the Exclusion of Prior Convictions under Rule 404(b)*

Grier also contends that his counsel's assistance was ineffective because she failed to argue properly that his prior criminal convictions were inadmissible under Rule 404(b) of the Federal Rules of Evidence. This argument fails for a variety of reasons. First, Grier's counsel thoroughly litigated this matter by filing a comprehensive opposition to the Government's Motion to Allow Evidence under Rule 404(b), ECF No. 47, and by advocating for its exclusion at trial.

> I believe that, I continue to argue that the fact that this information does show prior behavior of the defendant, however, it's more prejudicial than it is probative. The jury in this case would not be able to withdraw themselves from the similarities of the case, to the similarities of this case. And that's one of the things the Court looks at, whether it's too prejudicial, and that's why I laid that out in the, in my argument. Even if the Court found that it met the requirements of 404, it clearly is -- does not meet the requirement that it not be overly prejudicial, more probative than – more prejudicial than probative. And under those circumstances, I would ask that the Court not allow it, in addition to all my other arguments that I put in my brief.

Nov. 6, 2013 Trial Tr. 136:4–17, ECF No. 92. In light of these efforts, I do not find that Grier has overcome the "presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689.

Moreover, after the Court ruled in the Government's favor, Grier raised the issue on appeal and Fourth Circuit affirmed, concluding that this Court did not abuse its discretion by "allowing the Government to introduce evidence of his prior conviction." *Grier*, 619 F. App'x at 227. Given that Grier presented this issue to the Fourth Circuit, he cannot now "recast [it], under the guise of collateral attack." *See Boeckenhaupt*, 537 F.2d at 1183.

## Conclusion

In sum, Grier has not shown that his trial counsel's assistance was constitutionally deficient with regards to any of the arguments that he advances. In fact, many of the issues that Grier insists his counsel "failed to argue" were in fact zealously argued by his counsel both in writing and at hearings before the Court. Accordingly, I will deny his § 2255 Motion.

## Certificate of Appealability

Rule 11(a) of the Rules of Governing Proceedings under 28 U.S.C. §§ 2254 or 2255 provides that the court must "issue or deny a certificate of appealability when it enters a final order adverse to the petitioner." *Brown v. United States,* Civil No. DKC-10-2569, Crim. No. DKC-08-529, 2013 WL 4562276, at *10 (D. Md. Aug. 27, 2013). This certificate "is a 'jurisdictional prerequisite' to an appeal from the court's order" that "may issue 'only if the applicant has made a substantial showing of the denial of a constitutional right." *Id.* (quoting 28 U.S.C. § 2253(c)(2) and citing *United States v. Hadden,* 475 F.3d 652, 659 (4th Cir. 2007)). A prisoner makes this showing "[w]here the court denies a petitioner's motion on its merits . . . by demonstrating that reasonable jurists would find the court's assessment of the constitutional claims debatable or wrong." *Id.*

(citing *Miller-El v. Cockrell*, 537 U.S. 322, 336-38 (2003); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). Because Grier has not shown that a reasonable jurist "would find the court's assessment of constitutional claims debatable or wrong," and therefore has not made a substantial showing that his constitutional rights were denied, this Court will not issue a certificate of appealability. *See id.*; 28 U.S.C. § 2253(c)(2). *Miller-El*, 537 U.S. at 336-38; *Slack*, 529 U.S. at 484. However, this ruling does not preclude Roy from seeking a certificate of appealability from the Fourth Circuit. *See* 4th Cir. Loc. R. 22(b)(1).

## ORDER

For the reasons stated above, it is, this 3rd day of September, 2019, hereby ORDERED that

1. Grier's request for extension of time to file his reply, ECF No. 111, IS GRANTED, and his Reply, ECF No. 112, is accepted as filed;
2. Petitioner's § 2255 Motion, ECF No. 106, IS DENIED;
3. Petitioner's Supplemental Motion, ECF No. 107, IS DENIED; and
4. The Clerk is directed to file a copy of this Memorandum Opinion and Order in Criminal No. PWG-13-243 and Civil Action No. PWG-17-2900, to MAIL a copy of it to Petitioner and the Government, and to CLOSE Civil Action No. PWG-17-2900.

_____/S/_____
Paul W. Grimm
United States District Judge